case number 25-920. Good morning and may it please the court. I'm Dan Irwin of the Connecticut Federal Defender's Office on behalf of Nicholas Defelice. I'd like to reserve two minutes for rebuttal. Thank you. Also, before I begin, I only intend to address the sentencing question in this appeal and stand on our briefs with respect to the merits and liability questions. This case is about what it's become, is about who must be the last casualty, the last incarcerated person in furtherance of a policy abandoned by Congress. Before I get to that, let me give you a little context. Even before the change in the law that is central to our briefing in this case, 17% of defendants in the guidelines cohort that the probation officer calculated my client in did not receive sentences of incarceration for this offense. That's 144 people out of 849 offenders. That's nearly one-fifth of defendants who got sentences that did not involve terms of incarceration in the past five fiscal years. But more than that, only four months after the district court imposed the sentence of 12 months and one day, Congress wholly abandoned the stamp policy. And when I say wholly abandoned, I do concede that the registration requirement remains in place under the new law. But the stamp policy... The new law is constitutional. You're not arguing that it is. I presuppose it with respect to the sentencing argument. I mean, there's litigation out there, but... You're preserving your argument with respect to the constitutionality and then you go into the sentencing and say... Correct. Correct. You know, this circuit's precedent being what it is, you know, we... There have been a lot of changes and we address them. Okay. Thank you for clarifying. But when the stamp policy was discontinued last summer, it created a meaningful change in the law that dovetails critically with this record. And our position is that at a minimum, I mean, I think we've briefed for a reversal of the sentence, but at a minimum, this creates an ambiguity in the record for which a remand is necessary. What's the ambiguity? What's the precise nature? There's two. I think one factual and one legal. The legal ambiguity, and I also could imagine this court might address it and provide some guidance, but what is the deterrent interest at this point in seeing that people pay the tax, buy the tax stamp on NFA firearms? Now that they can do it for free, that changes the calculation. The second, the factual nexus, is the extent to which this offense was motivated by poverty. I think the government has disputed that in its briefing, but the record is, or suggested otherwise in its briefing, but the record supports a strong inference if it does not clearly point to that contention. The reason being is that DeFelice had transferred lawfully something on the order of around 200 pistols through the Connecticut state process that didn't require any money, so he was neither surreptitious nor contentious of that law. He had made a record and complied with a state registration requirement where it existed. And second, we extensively briefed the sick child that he had for whom he... Wasn't this all before the district court judge becomes sympathetic? But wasn't this all before? It was, but it alters the analysis. And look, I mean, I'm... But you're not making an argument that the district judge erred, are you, or are you? We were, but I think it's stronger because of the change in the law. I mean, you know, I point to the Jason data and who didn't go to jail and the sort of substantive reasonableness, but really, I think that, and look, the district court was conscientious with regard to the sick child and the compelling family circumstances. What's the scope of the waiver here at the time of the plea? The, are you referring to like an appellate waiver with the sentence or... Appellate waiver, well, the waiver, the appellate waiver as the sentence. There is no appellate waiver in this case. There's no appellate waiver. Yeah, he preserved both rights. Okay. All right. So, you know, for that reason, we've raised this. But I think the critical fact is that because the law changed after the fact, and we have a record that clearly points to a guy who complied with these laws in many respects, we even put in our briefing, I think at footnote eight, it's A107 and 108, that, you know, an insurance payment in the hospital, insurance deductible in the hospital could be $200. When you remove that barrier to a person who is hurting for money, it makes it far easier to comply with the law's registration requirement. So I think now we need clarity on that issue. And I don't fault the district court for that. We didn't see this coming either. Why? Say it to me. You know, I've seen a number of different cases where there has been a change in the law and someone was previously sentenced under a different sentencing regime or a different legal regime, and that has not, we've not seen that as a reason to describe the previously imposed sentence as substantively unreasonable or procedurally unreasonable, in part because I think the district court described, I think that this is the case, there is an element of respect for the law, the extent laws that exist at the time of sentencing, that the district court judge can consider. And I think what you're saying is now that there's been a modification change in law, that is a reason to go back and do what we do. Is that right? I think that there are... Well, first, it's an apt description of what you're asking. Yes, but I understand that it's not always what courts do, and I think that there are some factors that make this kind of sui generis, or at least very narrow. One is because the district court's rationale for the sentence was exclusively general deterrence. It was respect for that law. And when that law has been removed, it really begs the question of what is being deterred or promoted here. Second, I do think that the closeness in time has some effect. And third, because the poverty issue was so extensively briefed and addressed below, it changes. It doesn't make him innocent, but I do think it changes the culpability analysis. Someone who can do this for free or pay the money readily and is just indifferent is more culpable than somebody who's trying to make ends meet and pay for his sick child. But that seems to me sort of a different version of the same argument. In other words, the factual or legal scenarios change since the sentencing, but in terms of what was before the district court judge, when a sentence was imposed, we are where we are. There was a tax and there was a law. Correct, but I think an element of the offense has changed entirely, and while he would still be guilty in this analysis, it goes to culpability. And then to address the balance of your question about other defendants and changes in the law, those in prison serving longer sentences not on direct appeal could also file a reduction in sentence motions should this analysis be applied elsewhere. Thank you. Thank you very much. Mr. Gentile. May it please the Court. The appellant has layered numerous arguments to challenge his conviction and sentence on appeal, but despite his scattershot approach, the result should be straightforward. I'll focus my remarks as to the sentencing argument because I believe the counsel has essentially abandoned the constitutional arguments here or argument. With respect to the – We're preserving, preserving. I heard a recognition, at least, that this Court's precedent – He's not worried about us. He's looking up.  But as a result, Your Honors, I'll focus on the sentencing arguments that we've heard here today. The district court's sentence was not procedurally or substantively unreasonable. I heard argument regarding a policy abandoned by Congress. Let's be clear about what Congress did with the amended NFA. It remained – the regulatory framework remains in place. The registration requirement remains in place. And the tax obligation remains in place for those who are manufacturing and dealing firearms, which should be FFL holders. That would be the special occupancy tax. That remains in place. The purpose of the registration requirement – This wasn't a manufacturing case, though, was it? I'm sorry? What he pled guilty to was a possession of an unlawful firearm. Is that right? Yes, Your Honor. Okay. So there's no tax now that he obtained? There would be no tax for a private citizen to obtain a – to file under the NFA to possess an NFA weapon. I'm sorry, Your Honor. But the other requirements remain in place. So, for example, you would still need to submit an application to obtain an NFA weapon, which would include submitting a fingerprint, passing a background check, and the ATF would need to determine whether possessing that weapon would be lawful under state and local law where the person resides. All of those purposes that are important, that were important at the time, under the NFA that was in place at the time Mr. DeFelice pled guilty and was sentenced, remain today. So the only thing is the tax? The only thing is the $200 tax. And the argument I hear is that, you know, because Mr. DeFelice was destitute, the only reason he didn't make the application under the NFA was because he couldn't afford the $200 tax. I'm not – I'm not sure anything in the record really supports that inference. Was that argument made? Was that argument made? I don't – I don't know that – I think it was – it might have been available to him, presumably, that, look, here's the reason I didn't register, I couldn't afford it, I was, you know, I had family obligations and so on. Was that argument made? I don't recall. I don't want to speak out of turn and say that it wasn't because it's off the top of my head. I can't remember if that precise argument was made. We certainly heard plenty of argument about the defendant's financial circumstances, which weighed heavily in Judge Shea's decision to permit self-surrender, and he's also permitted bond pending appeal because of those circumstances. And that all went into Judge Shea's sentencing determination and was a basis for a downward variance below the bottom of the guidelines range here. So, Your Honors, this sentence was not substantively unreasonable based on the later occurring change to the NFA. And Your Honor asked a question about whether we would typically look back when a statute is amended to see if the sentence was substantively unreasonable. Section 109 says – it's 1 U.S.C. 109 – says that even if a statute is later repealed, that wouldn't extinguish the liability incurred while the statute was in place. So if there's no further questions, Your Honor, we'll rest on our briefs and ask that you affirm the judgment. Actually, may I ask you one question? Yes, Your Honor. About the government's change of position with respect to the constitutional issue. Can you just address that briefly? Sure. The government continues to believe that the regulation under the NFA for short-bail rifles and suppressors remains constitutional. It's just a slight different analysis to how the government is getting there. The government believes that with respect to suppressors, that they are a useful but unnecessary firearm accessory. The government – sort of an analogy would be how in the Miller case, the Supreme Court recognized that things that are necessary to the exercise of the Second Amendment right, such as ammunition, if that were to be banned, that would be a violation of the Second Amendment. The government's view is that suppressors are useful and closely associated with the exercise of the Second Amendment right, but that nevertheless the history and tradition of regulating weapons that are uniquely susceptible to criminal misuse permits the government to impose its modest burden on obtaining suppressors. Thank you, Your Honor. Your Honor. Counsel. Thank you. I'd just like to address two quick issues, the tax issue and the poverty issue. On the removal of the tax requirement but the registration requirement remaining intact, we acknowledge below, and I'm not proposing this as a sort of binary analysis. I'm presupposing this law remains constitutional at this point, so if it does, that stays in place. But under Staszynski, which is cited in our brief, this law, it's the 1937 case that said that the NFA survives as a taxation power, not a Commerce Clause Act. It does not, the registration requirement, whatever public safety purpose it furthers, is not the power Congress was exercising in this case. So by some measure, the harm here should be measured by way of the power that Congress exercised. It's kind of the tail wagging the dog. This began as a taxation measure. In the 30s, these weapons were prohibitively expensive. I think there's a note, a head note in Staszynski suggesting they were $10 at the time, meaning this tax was 200%. Economics have changed, not the law, and the policy regime has changed as a result. But this came under the enforcement power, under the tax power. That's not the public safety interest. Finally, on the issue of poverty, I pointed you to A107 and 108 of our sentencing memo. We discussed his finances at that time. We didn't brief it more explicitly. A107 and 108, we didn't brief it explicitly because he was still required to pay the tax. But if you open this door to free registration, then it gives us more incentive to brief that issue, and that's what we would do on a remand. Thank you. This is your brief? Yes. Okay. Thank you. Thank you very much. Thank you. We'll reserve this issue.